HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JO-HANNA READ, as guardian ad litem for C.B., a minor,

    Plaintiff,

  v.

GREG A. MOE, et al.,

    Defendants.

CASE NO. C10-1010RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on two motions to dismiss from Defendant Frekhaug Stal AS, as well as Plaintiff's two motions to compel discovery related to the motions to dismiss. Dkt. ## 45, 47, 51, 68. Although the parties requested oral argument, oral argument is unnecessary in light of the court's disposition today. For the reasons stated below, the court DENIES Frekhaug Stal's motions to dismiss (Dkt. ## 45, 47) and GRANTS Plaintiff's motions to compel (Dkt. ## 51, 68). This order concludes with instructions for the parties to complete discovery on personal jurisdiction and to submit additional briefing. The court directs the clerk to create a motion calendar for November 16, 2012, to address the parties' new submissions.

ORDER – 1

## II. BACKGROUND

In August 2007, a "snap hook"[1] aboard the commercial fishing vessel F/V TONGASS LADY broke, causing the portion still attached to a line to swing free and strike Plaintiff C.B. in the face, severely injuring her. At the time, the TONGASS LADY was in navigable waters off the coast of Alaska. Plaintiff was a minor.

Plaintiff, through her guardian ad litem, filed this suit in June 2010. She named as Defendants Greg Moe, who is the owner of the TONGASS LADY, the vessel itself, and Frekhaug Stal, the Norwegian company who manufactured the snap hook. She invoked the court's admiralty jurisdiction, asserting no claims under the law of any state. Not long thereafter, Mr. Moe filed an answer and a cross-claim against Frekhaug Stal and a separate exoneration of liability action (*In re Moe*, No. 10-1287RAJ), which was also assigned to this court. In August 2010, the court stayed this case in light of the exoneration of liability action. No. 10-1287RAJ (Dkt. # 4). Frekhaug Stal was not a party in the exoneration action. Perhaps unaware of the stay, Frekhaug Stal filed a September 2010 motion in this case to extend its deadline for responding to Plaintiff's complaint. Frekhaug Stal explained that it wanted an extension "to respond to or answer the complaint, and to file any motion relating to the Complaint," "expressly preserve[d] any objections to venue, process and jurisdiction," and informed the court that Plaintiff did not oppose its motion. Dkt. # 24. Plaintiff raised no objection, and the court granted an extension until October 4, 2010. On that date, Frekhaug Stal filed a motion to dismiss for lack of personal jurisdiction. The court terminated that motion, noting that Frekhaug Stal could renew it, if necessary, when the court lifted the stay. The parties in the exoneration of liability action reached a settlement that the court approved in December 2011. No. 10-1287RAJ (Dkt. # 25). The court lifted the stay in this case on February 6, 2012. Dkt. # 44. Frekhaug Stal renewed its motion to dismiss three weeks later.

---

[1] A "snap hook" is a hook spliced to the end of a winch cable, used to connect the cable to nets and other equipment to lift to and from the vessel's decks.

ORDER – 2

1 Frekhaug Stal is a Norwegian company. Although there is no dispute that many of
2 its fishing products are sold in the United States, Frekhaug Stal is tight-lipped about its
3 distribution network. The only evidence it offered is a declaration from an employee
4 named John Villy Sandvik. Mr. Sandvik avers that in the last 20 years, Frekhaug Stal has
5 had no Washington business license, no Washington registered agent, no Washington
6 phone numbers, and no Washington mailing addresses. He states that Frekhaug Stal has
7 not targeted advertising at Washington in more than 20 years. He declares that Frekhaug
8 Stal has not, for at least seven years, sold products to Washingtonians, contracted with
9 Washingtonians, or distributed products in Washington. He also avers that Frekhaug Stal
10 "current[ly] does not have an agent or distribution network in the United States."

11 Shortly after the court lifted the stay, Plaintiff served two sets of interrogatories
12 and requests for production on Frekhaug Stal, inquiring specifically about its activities in
13 Washington and Alaska and more broadly about its activities in the United States.
14 Frekhaug Stal responded to the discovery requests, but imposed its own limitations. It
15 refused to provide any information about activities prior to June 9, 2007, and it refused to
16 provide any information about its activities in any state except Washington.

17 Despite Frekhaug Stal's refusal to provide information, Plaintiff has acquired
18 some evidence of Frekhaug Stal's presence (or at least its products' presence) in the
19 United States. The snap hook that broke bore a "Boss" brand. Frekhaug Stal makes Boss
20 products. Boss hooks are available at outlets in the United States, including commercial
21 fishing supply stores in western Washington. The master of the TONGASS LADY
22 bought the snap hook that broke at the Alaskan supply outlet of the seafood company to
23 which it delivered fish. The seafood company purchased the hook from Redden Marine,
24 a supplier in Bellingham, Washington. Euro Products, a distributor with an office and
25 warehouse in Seattle, also sells BOSS products. Euro Products and at least two other
26 Seattle-based businesses sell BOSS products through their catalogs and websites. When

ORDER – 3

one of Plaintiff's agents visited Euro Products' Seattle office, he obtained a page from Frekhaug Stal's supply catalog. That page declared that Frekhaug Stal's "sales representatives cover the whole world," but listed only Norwegian phone numbers and addresses. Plaintiff's evidence also shows that in 2010, Frekhaug Stal maintained an English-language website at www.frekhaugstal.com. This year, when Plaintiff's agents revisited the website, it had been transformed into a Norwegian-language website. The current website declares that about 35% of Frekhaug Stal's business is the manufacture of Boss products and that Frekhaug Stal exports about half of its products. The website lists Norwegian phone numbers, addresses, and email addresses. According to Plaintiff, the website provided essentially the same information when it was still in English. No one suggests that any version of the website permitted direct purchases from Frekhaug Stal.

Plaintiff also subpoenaed several entities who sell Boss products in the United States, including Euro Products. Several of those entities sell Boss products directly to end users. Each of them explains that it has no direct relationship with Frekhaug Stal, and that it buys its Frekhaug Stal products from a distributor. Those distributors, in turn, also explain that they have no direct relationship with Frekhaug Stal, and that they buy their Boss products from "Blue Line," a Danish company. In short, Plaintiff has so far acquired no evidence that Frekhaug Stal has any direct relationship with anyone in the United States. Plaintiff has, however, attempted to explore the relationship between Blue Line and its affiliated entities and Frekhaug Stal. It propounded a third set of discovery requests to Frekhaug Stal to explore that relationship. Although no party has put Frekhaug Stal's responses in the record, no one disputes that Frekhaug Stal refused to provide complete responses.[2]

---

[2] Although Plaintiff's third discovery requests are in the record, Frekhaug Stal's responses are not. Each of the requests targets information about Frekhaug Stal's relationship with Blue Line or foreign entities affiliated with Blue Line. The court assumes that Frekhaug Stal provided no substantive responses to these requests. Frekhaug Stal does not argue otherwise.

ORDER – 4

Now before the court are Frekhaug Stal's motion to dismiss for lack of personal jurisdiction[3] and two motions from Plaintiff to compel responses to her discovery requests. For reasons the court now explains, it denies the motions to dismiss without deciding whether Frekhaug Stal is subject to personal jurisdiction in this court. The court cannot make a final decision until Plaintiff completes jurisdictional discovery, a process that the court will aid by granting Plaintiff's motions to compel. Those motions seek evidence critical to the court's ultimate decision on personal jurisdiction.

### III.  ANALYSIS

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). A plaintiff builds a prima facie case by providing evidence that, if believed, would support the court's exercise of jurisdiction. *Id.* at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in a plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129. If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977). In this case, Plaintiff has demanded an evidentiary hearing.

The court now considers three issues: whether Frekhaug Stal waived the right to deny personal jurisdiction, whether Frekhaug Stal is subject to personal jurisdiction in this court by virtue of its contacts with Washington and Washington's long-arm statute,

---

[3] Frekhaug Stal actually filed two motions to dismiss, one directed to Plaintiff's claims and the other directed to Mr. Moe's cross claims. There are few differences between the motions, and the court will treat them as a single motion.

ORDER – 5

1  and whether Frekhaug Stal is subject to personal jurisdiction in this court by virtue of its
2  contacts with the United States as a whole and Federal Rule of Civil Procedure 4(k)(2).

### A. Frekhaug Stal Did Not Waive Its Right to Deny Personal Jurisdiction.

Rule 12(h)(1) dictates that a defendant waives a personal jurisdiction defense if it does not raise it in a responsive pleading or in a motion to dismiss that precedes the responsive pleading. Although "Rule 12(h)(1) specifies the minimum steps that a party must take in order to preserve a defense," it does not follow "that a party's failure to satisfy those minimum steps constitutes the only circumstance under which a party will be deemed to have waived a defense." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998). A court can find that a defendant waives a defense listed in Rule 12(h)(1) if its litigation conduct amounts to "deliberate, strategic behavior" or "sandbagging" designed to seek affirmative relief from the court only to take shelter later in the protection of a threshold defense. *Id.*

Frekhaug Stal did not waive its right to file a Rule 12(b)(2) motion. The only relief it sought from the court before it filed that motion was relief from the deadline for responding to Plaintiff's complaint. Frekhaug Stal did not promise an answer (as opposed to a Rule 12(b)(2) motion), and it expressly preserved its right to challenge personal jurisdiction. Even a motion to extend time that does not expressly reserve a challenge to personal jurisdiction "is probably best viewed as a holding maneuver while counsel consider how to proceed," as opposed to a waiver. *Benny v. Pipes*, 799 F.2d 489, 493 (9th Cir. 1986). Frekhaug Stal did not waive its personal jurisdiction defense by asking for additional time to respond to Plaintiff's complaint.

### B. Frekhaug Stal Might Be Subject to Personal Jurisdiction Because of Its Contacts with Washington.

In a case like this one, where no federal statute governs personal jurisdiction, the court begins its personal jurisdiction analysis with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284

ORDER – 6

F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute (RCW § 4.28.185) extends the court's personal jurisdiction to the broadest reach that the Due Process Clause of the United States Constitution permits. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989).

There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 & n.9 (1984). Both species depend on the defendant's contacts with the forum. "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts within the forum state. *Id.*

Plaintiff ought to have conceded that Frekhaug Stal is not subject to general jurisdiction in Washington. A plaintiff must meet an "exacting standard" in proving general jurisdiction, because a finding of general jurisdiction is a finding that the defendant can be forced to appear in the forum state to "answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Plaintiff's attempt to meet this "exacting standard" is confined to a single footnote. Pltf.'s Opp'n (Dkt. # 54) at 11 n.3. On the record before the court, no one could conclude Frekhaug Stal is subject to general jurisdiction in Washington. It is difficult to imagine that Plaintiff's assertion of general jurisdiction will be any stronger after it completes jurisdictional discovery, although the court will not preclude the

ORDER – 7

argument. The court reminds Plaintiff, however, of its obligation to present only non-frivolous contentions to the court.

A three-part test determines whether the assertion of specific jurisdiction over a defendant comports with the Due Process Clause:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or [a] resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden on the first two parts of the test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff meets its burden, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

As to the requirement of purposeful availment or purposeful direction, cases like this one—cases in which a foreign manufacturer with little or no presence in a state is haled into that state's courts because its product has made its way into the state and injured a plaintiff—have proven challenging. The Supreme Court has twice addressed the issue directly, first in *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) and almost a quarter-century later in *J. McIntyre Machinery v. Nicastro*, 131 S. Ct. 2780 (2011). In both cases, the Court considered the circumstances in which placing a product into the "stream of commerce" will suffice as a basis for personal jurisdiction

ORDER – 8

in a forum where the stream of commerce carries the product. In both cases, the Court did not produce a majority opinion.

In *Asahi*, the Court considered a product liability suit arising from a motorcycle tire that failed and injured two Californians. 480 U.S. at 105-06. They sued the tire manufacturer (a Taiwanese company), who filed a cross-claim for indemnity against Asahi, the Japanese company who had manufactured the valve assembly in the tires. *Id.* Asahi knew that the Taiwanese manufacturer used its valve assemblies in tires sold worldwide, including sales in California. *Id*. at 107. Asahi itself, however, did not do business in California, had no office, agents, employees, or property in California, did not advertise or solicit business in California, and had no control over the distribution network that brought its products to California. *Id.* at 112. The question before the Court was thus whether "mere awareness on the part of a foreign defendant that the [products] it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes minimum contacts between the defendant and the forum State such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 105 (internal quotations omitted).

Two four-Justice plurality opinions offered sharply different answers to the question in *Asahi*. Justice O'Connor's plurality opinion would have held that the Due Process Clause "require[s] something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce . . . ." *Id.* at 111, 112. The "something more" is an action of the defendant "purposefully directed" toward the forum state. *Id.* at 112. For example, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" could subject a manufacturer to personal jurisdiction. *Id.* Justice Brennan's plurality opinion would

ORDER – 9

have found the requisite purposeful availment whenever the manufacturer "is aware that the final product is being marketed in the forum state, [because] the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117.

The Court reached a judgment in *Asahi* because seven Justices agreed that whether or not Asahi had purposefully availed itself of a California forum, it would be unreasonable to subject it to suit in California. As Justice Brennan explained: "This is one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Id.* at 116 (internal quotations omitted, ellipsis and bracketed language in *Asahi*). The seven Justices concurred in the portion of Justice O'Connor's opinion that examined the burden on Asahi, the interests of California, and the plaintiff's interest in obtaining relief. *Id.* at 113. That opinion acknowledged the "unique burdens" placed on a defendant who must defend itself in a foreign legal system. *Id.* at 114. It noted that neither of the injured Californians remained as plaintiffs, leaving only the Taiwanese distributor as a plaintiff. *Id.* That fact "considerably diminished" California's interest in the dispute, particularly where the dispute turned on the law of indemnification rather than California's safety standards. *Id.* The opinion questioned whether California law would even apply to the remaining dispute. *Id.* at 115. Finally, the court emphasized the need for "great care" in extending personal jurisdiction internationally. *Id.*

In the wake of *Asahi*, the Ninth Circuit has not expressly decided whether to adopt the approach of Justice O'Connor's plurality opinion, Justice Brennan's plurality opinion, or a hybrid of the two. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1196 n.3 (9th Cir. 1988) (summarizing the differences between the *Asahi* pluralities), *Nat'l Union Fire Ins. Co. v. Aerohawk Aviation, Inc.*, 259 F. Supp. 2d 1096, 1104-05 (D. Idaho 2003) (summarizing other Circuit's assessments of *Asahi*, observing that "the Ninth Circuit has

ORDER – 10

not specifically adopted either view"). Some Ninth Circuit opinions have cited portions of Justice O'Connor's plurality opinion. *E.g.*, *Holland Am.*, 485 F.3d at 459; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The parties cite no Ninth Circuit precedent whose result turns on the choice between one of the two plurality opinions in *Asahi*, and the court is aware of none.

Taking up the stream-of-commerce theory again almost 25 years later, the *J. McIntyre* Court also produced a four-justice plurality. In *J. McIntyre*, the Court considered whether a British manufacturer of a scrap metal machine could be sued in New Jersey after one of its machines seriously injured a worker in New Jersey. 131 S. Ct. at 2786. The manufacturer made no direct sales to customers in the United States and its products came to the United States only through a distributor over which it had no control. *Id.* Only four machines had ended up in New Jersey. *Id.* Although the manufacturer's representatives occasionally attended trade shows in the United States, they had never come to New Jersey. *Id.* Justice Kennedy's plurality opinion attempted to address the "imprecision arising from *Asahi*" by clarifying (or perhaps jettisoning) the "stream of commerce" metaphor. *Id.* at 2788. The plurality opinion ultimately concluded that the manufacturer engaged in no "activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws." *Id.* at 2791. Unlike Justice O'Connor's twin holdings in *Asahi*, Justice Kennedy's opinion rested solely on the determination that the manufacturer had not purposefully availed itself of one state's forum.

Two Justices concurred in the judgment in *J. McIntyre*, bringing some clarity to the stream-of-commerce doctrine. Justice Breyer, joined by Justice Alito, did not "agree with the plurality's seemingly strict no-jurisdiction rule," but his opinion also eschewed the approach of the New Jersey Supreme Court, an approach that in many respects resembled Justice Brennan's opinion in *Asahi*. *J. McIntyre*, 131 S. Ct. at 2793. The

ORDER – 11

concurrence rejected the view that jurisdiction could rest "upon no more than the occurrence of a product-based accident in the forum State." *Id.* The concurrence rejected an approach that "would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue." *Id.* The concurrence emphasized that the size of the manufacturer, its status as a foreign concern, and other individualized considerations were all relevant. *Id.* at 2793-94. The concurring Justices declined to join Justice Kennedy's plurality opinion because they believed that the Court's precedents, including *Asahi*, were sufficient to resolve the case. The concurrence noted that even Justice Brennan's plurality opinion in *Asahi* would have required the "regular and anticipated flow of commerce" into a forum state before exercising personal jurisdiction. *Id.* at 2792 (quoting *Asahi*, 480 U.S. at 122). Because only a few of the manufacturer's products had made their way to New Jersey, the concurrence found that the manufacturer could not be subject to jurisdiction there. *Id.* at 2792.

What is plain to the court, viewing *Asahi* and *J. McIntyre* as the bookends of twenty-five years of Ninth Circuit precedent, is that Frekhaug Stal has declined to provide the very evidence that would permit the court to decide whether it is subject to jurisdiction in Washington. For reasons that the court cannot fathom, Frekhaug Stal believed it appropriate to refuse to provide any discovery revealing its business activities in the United States prior to June 2007. The accident that gives rise to this suit happened in August 2007. Frekhaug Stal thus asserts that any conduct more than two months prior to the accident is irrelevant to the court's jurisdictional inquiry. It could not be more wrong. Because of Frekhaug Stal's silence, Plaintiff has no way to determine the nature of the distribution chain that brought the allegedly defective snap hook from Frekhaug

ORDER – 12

Stal to the TONGASS LADY. That chain no doubt begins with conduct occurring well before June 2007. If Frekhaug Stal is like the manufacturers in *Asahi* and *J. McIntyre*, a foreign manufacturer with no significant connection to the forum state, its choice to withhold the evidence that would prove that point is quite unfortunate. The result of that choice is that Frekhaug Stal will avoid this court's jurisdiction, if at all, only by answering all of Plaintiff's discovery requests. Plaintiff has offered to limit its discovery to Frekhaug Stal's activity in the year 2000 or later. That agreement is reasonable, in sharp contrast to Frekhaug Stal's arbitrary refusal to provide indisputably relevant discovery.

In light of Frekhaug Stal's failure to provide discovery, the court addresses the three-part test for specific jurisdiction only briefly. As to the first part, the court cannot determine whether Frekhaug Stal purposefully availed itself of a Washington forum where Frekhaug Stal has withheld the discovery most relevant to that determination. As to the second part, Plaintiff's uncontroverted evidence shows that the hook that snapped aboard the TONGASS LADY came from a Washington supplier, which suffices to who that Plaintiff's claims arise at least in part from Washington activity. Whether the court can attribute that activity to a purposeful act of Frekhaug Stal is a question that discovery will help answer. Finally, Frekhaug Stal cannot make a "compelling case" that the court's exercise of jurisdiction would be unreasonable while withholding evidence critical to that determination. The first of the seven factors relevant to that inquiry is "the extent of the defendants' purposeful injection into the forum state's affairs," *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (listing, in addition, "(2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

ORDER – 13

existence of an alternative forum."). Frekhaug Stal's refusal to provide discovery relevant to the first factor makes it impossible for the court to complete its inquiry. Rather than address the remaining factors in detail, the court simply concludes that they do not, standing alone, compel the conclusion that it would be unreasonable to exercise jurisdiction over Frekhaug Stal.

**C.   Frekhaug Stal Might Be Subject to Personal Jurisdiction in This Court Because of Its Contacts with the United States.**

Plaintiff contends that even if Frekhaug Stal does not have minimum jurisdictional contacts with Washington, it has minimal contacts with the United States. Rule 4(k)(2) of the Federal Rules of Civil Procedure, the so-called "federal long-arm statute," provides as follows:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A)   the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B)   exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).

Frekhaug Stal attempts to avoid Rule 4(k)(2) entirely. It argues that Plaintiff cannot rely on 4(k)(2) because she did not adequately plead it and that Plaintiff's claims do not "arise[] under federal law" as the rule requires. Frekhaug Stal is wrong on both counts.

Although Plaintiff did not mention Rule 4(k)(2) until her opposition to Frekhaug Stal's motion to dismiss, that does not prevent her from relying on it. The Ninth Circuit has not squarely addressed a plaintiff's pleading obligations when invoking Rule 4(k)(2). The federal courts of appeals that have considered the issue have rejected the notion that a plaintiff must affirmatively plead reliance on Rule 4(k)(2). *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012) ("[O]ur precedent holds that Rule 4(k)(2) can be

ORDER – 14

considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction."); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (applying Rule 4(k)(2) for the first time on appeal, even where neither the parties nor the district court had raised it in the court below).  The court agrees with the reasoning set forth in those cases, and declines to impose a requirement that a plaintiff plead its reliance on Rule 4(k)(2).

Plaintiff's claims, invoking the court's admiralty jurisdiction (28 U.S.C. § 1333), "arise[] under federal law" for purposes of Rule 4(k)(2).  The Ninth Circuit has not squarely decided whether claims invoking admiralty jurisdiction "arise[] under federal law" for purposes of Rule 4(k)(2).  Every federal court of appeals to consider the question, however, has concluded that the federal long-arm statute applies to admiralty claims.  The Fifth Circuit first considered the question in *World Tanker Carriers Corp. v. M/V YA MAWLAYA*, 99 F.3d 717, 723 (5th Cir. 1996), holding that "federal law includes admiralty cases for the purposes of Rule 4(k)(2)."  Every other appeals court to touch on the issue has cited *World Tanker* approvingly.  *E.g.*, *Porina v. Marward Shipping Co.*, 421 F.3d 122, 127 (1st Cir. 2008); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218-19 (11th Cir. 2009).  That includes the Ninth Circuit, which has twice indicated its approval of the *World Tanker* holding.  In *Holland Am.*, the court cited *World Tanker*, remarking that no one disputed that the plaintiff's case arose under federal law "because [plaintiff] asserts admiralty claims."  485 F.3d at 461.  The court in *Getz v. Boeing Co.*, 654 F.3d 852, 859 (9th Cir. 2011) cited *World Tanker* extensively in concluding that state-law claims in federal court by virtue of the federal officer removal statute (28 U.S.C. § 1442(a)) were not a sufficient basis to invoke Rule 4(k)(2).  So far as the court is aware, no court has expressed a disagreement with the *World Tanker* court's analysis of Rule 4(k)(2).  The court concludes that the Ninth Circuit would follow *World*

ORDER – 15

*Tanker* (if it has not already) and hold that admiralty claims are claims "aris[ing] under federal law" for purposes of Rule 4(k)(2).

The Ninth Circuit might also recognize the exception that the *World Tanker* court acknowledged: admiralty claims in which state law supplies the rule of decision, so called "maritime but local" claims. 99 F.3d at 723. In cases where there is no applicable federal statute and the need for uniformity in admiralty law is not pressing, courts exercising admiralty jurisdiction may apply the substantive law of a state. *Id.*; *see also Western Boat Bldg. Co. v. O'Leary*, 198 F.2d 409, 414 (9th Cir. 1952) (acknowledging doctrine as applied to worker's compensation claims). Frekhaug Stal did not invoke the maritime-but-local doctrine, it instead cited cases that acknowledge that federal maritime law is a species of federal common law that draws upon state law. Those cases do nothing to undermine the applicability of Rule 4(k)(2), they simply acknowledge that the law of *all* states, not merely the law of the forum state, contribute to the development of general maritime law. The Supreme Court has twice applied that uncontroversial principle to acknowledge a federal maritime law of products liability. *E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864-65 (1986) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."), *id.* at 865 ("We join the Courts of Appeals in recognizing products liability, including strict liability, as part of the general maritime law."); *see also Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 878 (1997) (elaborating on maritime products liability standards). The Ninth Circuit has applied general maritime law to claims arising on navigable waters in Washington. *See Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 860 (9th Cir. 2011) (considering products liability claim based on heater fire on boat docked at a marina in Anacortes). Frekhaug Stal cannot avoid the application of Rule 4(k)(2) here.

ORDER – 16

Having determined that Rule 4(k)(2) applies, it is apparent again that Frekhaug Stal's refusal to provide relevant discovery prevents the court from determining whether the rule supports the exercise of personal jurisdiction. Frekhaug Stal's refusal to identify any state other than Washington where it is subject to jurisdiction is enough to satisfy Rule 4(k)(2)(A). *See Holland Am.*, 485 F.3d at 462 (finding Rule 4(k)(2)(A) satisfied "absent any statement from [defendant] that it is subject to the courts of general jurisdiction of another state"). Rule 4(k)(2)(B) requires the court to consider whether the exercise of jurisdiction over Frekhaug Stal is consistent with the Due Process Clause. That requires consideration of the same three-part the court applied in the previous section. *Holland Am.*, 485 F.3d at 462. Again, the court cannot apply that test because of Frekhaug Stal's refusal to provide discovery. In particular, Frekhaug Stal withheld any discovery related to any state other than Washington.

## IV.  CONCLUSION

For the reasons previously stated, the court DENIES Frekhaug Stal's motions to dismiss (Dkt. ## 45, 47) and GRANTS Plaintiff's motions to compel (Dkt. ## 51, 68).

Frekhaug Stal shall provide complete responses to Plaintiff's first, second, and third sets of discovery no later than October 24, 2012. Those responses shall provide information regarding the entire United States beginning in the year 2000 and continuing to the present time. In the interim, Plaintiff may continue its efforts to obtain evidence from third parties. The court cautions Frekhaug Stal that the court will issue sanctions if it continues to take unreasonable discovery positions. The court withholds sanctions today only because Plaintiff did not request them.

No later than November 9, Plaintiff must submit a brief supporting the assertion of personal jurisdiction over Frekhaug Stal. Frekhaug Stal shall respond no later than November 16. The court will not accept a reply brief. The clerk shall create a motion calendar for November 16 to address the parties' new submissions. The court will

ORDER – 17

determine, based on those briefs, whether to schedule oral argument or an evidentiary hearing.

DATED this 27th day of September, 2012.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 18